# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **ALFRED L. HERNANDEZ, an individual,<br>and DUDLEY I. KLATT, an individual,** | ‖ | |
| | ‖ | |
| **Plaintiffs,** | ‖ | |
| | ‖ | |
| **v.** | ‖ | **CIVIL ACTION NO. SA-11-CA-9-FB** |
| | ‖ | |
| **W. LYNN FRAZIER, an individual,<br>MAGNUM OIL TOOLS<br>INTERNATIONAL, LLC, a Texas Limited<br>Liability Company, MAGNUM<br>INTERNATIONAL, INC., an Oklahoma<br>Corporation, MAGNUM OIL TOOLS<br>CANADA, LTD., a Canadian Company,<br>MAGNUM CI, LTD., a Cayman Islands<br>Company, and GARD INTERNATIONAL,<br>LTD., a Cayman Islands Company,** | ‖ | |
| | ‖ | |
| **Defendants.** | ‖ | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:    Honorable Fred Biery**
**Chief United States District Judge**

Pursuant to the order of referral in the above-styled and numbered cause of action to the

undersigned United States Magistrate Judge[1] and consistent with the authority vested in United

States Magistrate Judges under the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 1(d) of the

Local Rules for the Assignment of Duties to United States Magistrate Judges in the Western

District of Texas, the following report is submitted for your review and consideration regarding

"Defendants' Motion for Partial Summary Judgment Concerning No Good Faith and Best Efforts

---

[1] Docket no. 118 (filed Nov. 21, 2011).

Damages," filed on July 13, 2012.[2]

## I. SUMMARY OF SELECTED PROCEDURAL HISTORY[3]

On February 15, 2011, defendant Magnum Oil Tools International, L.L.C. ("MOTI") moved to dismiss all counts alleged against it in plaintiffs' then-"live" pleading, their original complaint.[4] On July 20, 2011, Chief Judge Biery entered a limited order of referral, referring only MOTI's February 15, 2011 motion to dismiss and two other then-pending motions to the undersigned.[5] The same day, Chief Judge Biery granted plaintiffs leave to file their second amended complaint.[6] On August 23, 2011, the undersigned issued a report recommending that MOTI's motion to dismiss or be dropped as a party[7] be granted in part and denied in part, as

---

[2] Docket no. 330.

[3] A detailed overview of the procedural history of this case has been set forth in prior reports issued by the undersigned. This report summarizes only selected pleadings relevant to the disposition of the motion at issue.

[4] Docket no. 8.

[5] Docket no. 48.

[6] See docket nos. 42, 46, and 49. See also docket nos. 13, 24, and 27.

[7] With respect to applying MOTI's motion to dismiss to the claims asserted against MOTI in plaintiffs' second amended complaint, the report stated:
> Magnum [MOTI] filed its motion to dismiss in response to plaintiffs' original complaint, which has been amended twice. Other than adding [Magnum International, Inc. ("MII")] as a defendant in the first amended complaint and the modification in the second amended complaint of paragraph 97 regarding the duration of the "Agreement Contract" and the expiration of the confidentiality provision in the agreement, there appear to be no substantive changes from the original complaint to the second amended complaint in the allegations regarding Magnum [MOTI]. Therefore, this report determines whether Magnum [MOTI] has established the claims against Magnum [MOTI] in the second amended complaint should be dismissed.

Docket no. 61 at 14 n.63.

applied to plaintiffs' second amended complaint.[8]  No party filed objections to the report and, on

September 14, 2011, Chief Judge Biery accepted the report.[9]  With Chief Judge Biery's

September 14, 2011 ruling, each of plaintiffs' claims asserted against MOTI in plaintiffs' second

amended complaint remained in the case except for plaintiffs' breach of contract claim alleged

against MOTI in count 4, which was dismissed.[10]

On July 13, 2012, defendants filed "Defendants' Motion for Partial Summary Judgment

Concerning No Good Faith and Best Efforts Damages," in which defendants seek entry of

judgment as a matter of law on count 6 of the third amended complaint which alleges, in sum,

"Frazier materially breached the Agreement Contract by failing to act in good faith and use his

best efforts while executing his duties under the Agreement Contract."[11]  Defendants submit two

---

[8]  More specifically, the report recommended that MOTI's motion to dismiss count 4 for breach of contract should be granted and the claim as alleged against MOTI be dismissed; MOTI's motion to dismiss counts 1, 2, 3, and 5 should be denied; and MOTI's alternative motion to be dropped from the case as a party should be denied.  The report also recommended that plaintiffs' alternative motion to amend the complaint to add MII as a defendant, stated within plaintiffs' response to MOTI's motion to dismiss, be denied as moot, in light of the filing of plaintiffs' second amended complaint after the date on which MOTI filed its motion to dismiss. Docket no. 61 at 29–30.

[9]  Docket no. 70 at 1–2.

[10]  Id.

[11]  Docket no. 330.
On June 28, 2012, the corporate defendants, MOTI and MII, filed a motion for judgment on the pleadings and/or summary judgment on each of the counts asserted against them in plaintiffs' third amended complaint, as well as the alter ego or "agency" theory of liability. Docket no. 318.  In a report filed September 14, 2012, the Court recommends that judgment be entered in favor of MOTI and MII on each of plaintiffs' claims against them.  Docket no. 410. To the extent "Defendants' Motion for Partial Summary Judgment Concerning No Good Faith and Best Efforts Damages" seeks relief on behalf of MOTI and MII, the motion may be **denied as moot**.  Stated differently, even though the grounds advanced in "Defendants' Motion for Partial Summary Judgment Concerning No Good Faith and Best Efforts Damages" are not the

same as those advanced in support of the corporate defendants' earlier-filed motion, if each of plaintiffs' claims against the corporate defendants will be dismissed in connection with the corporate defendants' motion, there is no reason to address the aspects of defendants' motion for summary judgment on good faith and best efforts damages that may pertain to the corporate defendants.

On June 28, 2012, Frazier also filed a "Motion for Partial Summary Judgment on Plaintiffs' Breach of Contract Claim Based on Frazier's Patent Assignment." Docket no. 319. In a report filed September 14, 2012, the Court recommends that the portions of Frazier's motion that seek summary judgment because: (a) plaintiffs did not demonstrate damages they suffered as a result of Frazier's alleged breach of the Agreement Contract when he transferred and assigned to MII his patents rights at issue; and (b) Frazier's assignment of his patent rights at issue did not breach the Agreement Contract should be granted and the portions of count 6 in the third amended complaint that assert Frazier breached the Agreement Contract when he assigned his patent rights at issue should be dismissed. Docket no. 413 at 24. To the extent "Defendants' Motion for Partial Summary Judgment Concerning No Good Faith and Best Efforts Damages" seeks relief on behalf of defendants on plaintiffs' contention Frazier breached the Agreement Contract and, specifically, his obligation to act in good faith and use his best efforts based on his assignment of his own interest in certain patent rights to MII, the motion may be **denied as moot**. Correspondingly, any arguments in plaintiffs' response relating to Frazier's assignment to MII, see docket no. 385 at 1, 2, 8, are not further discussed in this report in deference to the recommendations in the report addressing "Defendants' Motion for Partial Summary Judgment on Plaintiffs' Breach of Contract Claim Based on Frazier's Patent Assignment." Docket no. 413.

On August 20, 2012, defendants filed "Defendants' Motion for Partial Summary Judgment Concerning No Fiduciary Duty." Docket no. 364. In a report filed September 14, 2012, the Court in part recommends that judgment be entered in favor of Frazier on plaintiffs' breach of fiduciary duty cause of action alleged count 10. Docket no. 412 at 26. To the extent "Defendants' Motion for Partial Summary Judgment Concerning No Good Faith and Best Efforts Damages" seeks relief on behalf of defendants on plaintiffs' contention they are owed fiduciary duties based on alleged partnership, the motion may be **denied as moot** in light of the recommendations in the noted September 14 report that, in sum: plaintiffs' third amended complaint judicially admits "[t]he Agreement Contract memorialized Plaintiffs' and Defendants' rights and obligations with respect to Flapper Valve Products," docket no. 129 at 27, ¶ 159; the Agreement Contract is not a partnership agreement; and plaintiffs have not raised a genuine issue of material fact sufficient to support a legal finding that the Agreement Contract was not the final expression of the parties' "business arrangement" regarding Magnum Valves™ to preclude plaintiffs' arguments that there was a pre-existing partnership that continued after the execution of the Agreement Contract that can "re-write" the contractual obligations of plaintiffs and Frazier to provide for a relationship expressly disclaimed in the Agreement Contract regarding the marketing of flapper valves. Docket no. 412 at 22–25. Correspondingly, any arguments in plaintiffs' response relating to the parties being "partners," see docket no. 385 at 4, or premised on/implicating a purported fiduciary duty owed by Frazier to plaintiffs are not further discussed in this report in deference to the recommendations in the report addressing "Defendants' Motion

4

exhibits in support of their motion.[12]

On August 28, 2012, after two extensions of time,[13] plaintiffs filed their response to the motion in which plaintiffs argue, in sum, that "the evidence provides multiple examples that demonstrate Frazier did not live up to his obligations" such that entry of summary judgment on plaintiffs' request for good faith and best efforts damages is not appropriate.[14] Plaintiffs submit four exhibits in support of their response.[15] On September 13, 2012, after an extension of time,[16] defendants filed their reply, advancing arguments in support of their request for partial summary judgment.[17]

## II. JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), 1367, and 2201.[18]

_____

for Partial Summary Judgment Concerning No Fiduciary Duty."  Docket no. 412.

[12] Docket no. 330, exhibits 1–2.

[13] Docket nos. 337, 380.  See docket nos. 336, 379.

[14] Docket no. 385 at 9.

[15] Id., exhibits A–D.

[16] Docket no. 396.  See docket no. 395.

[17] Docket no. 408.

[18] Plaintiffs assert federal question subject matter jurisdiction over their "action for Declaratory Judgment for correction of inventorship arising under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202," pursuant to 28 U.S.C. § 1331 and 1338(a), because their claims arise under "the patent laws of the United States, Title 35 of the United States Code, including 35 U.S.C. § 256."  Docket no. 129 at 1.  Plaintiffs additionally assert supplemental jurisdiction over their pendant state claims pursuant to 28 U.S.C. § 1367.  Id. at 2.  Defendants deny plaintiffs' jurisdictional allegations in their answer, and assert various affirmative defenses touching upon jurisdiction (such as, the defenses that plaintiffs lack standing and have claims barred by the applicable statutes of limitation), but have not otherwise moved to dismiss plaintiffs' claims for lack of subject matter jurisdiction.  Docket no. 137 at 1, 24, 27.  Without expressing an opinion

## III. SUMMARY JUDGMENT STANDARD

The standard to be applied in deciding a motion for summary judgment is set forth in

Rule 56, Federal Rules of Civil Procedure, which provides in pertinent part as follows:

> The court shall grant summary judgment if the movant shows that there is
> no genuine dispute as to any material fact and the movant is entitled to
> judgment as a matter of law.[19]

Mere allegations of a factual dispute between the parties will not defeat an otherwise proper

motion for summary judgment.  Rule 56 requires that there be no genuine issue of material fact.[20]

A fact is material if it might affect the outcome of the lawsuit under the governing law.[21]  A

dispute about a material fact is genuine if the evidence is such that a reasonable jury could return

a verdict for the nonmoving party.[22]  Therefore, summary judgment is proper if, under governing

laws, there is only one reasonable conclusion as to the verdict; if reasonable finders of fact could

resolve a factual issue in favor of either party, summary judgment should not be granted.[23]

The movant on a summary judgment motion bears the initial burden of providing the

court with a legal basis for its motion and identifying those portions of the record which it alleges

---

on the merit of affirmative defenses in defendants' answer, the Court finds it has federal question
subject matter jurisdiction over plaintiffs' federal claims, and supplemental jurisdiction over
plaintiffs' related state claims, pursuant to 28 U.S.C. §§ 1331, 1338(a), 1367, and 2201.

[19] FED. R. CIV. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

[20] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2510 (1986).

[21] Id. at 248, 106 S. Ct. at 2510; Thomas v. LTV Corp., 39 F.3d 611, 616 (5th Cir. 1994).

[22] Anderson, 477 U.S. at 248, 106 S. Ct. at 2510; Wise v. E.I. DuPont De Nemours & Co., 58 F.3d 193, 195 (5th Cir. 1995).

[23] Anderson, 477 U.S. at 249, 106 S. Ct. at 2510.

demonstrate the absence of a genuine issue of material fact.[24]   The burden then shifts to the party

opposing the motion to present affirmative evidence to defeat a properly supported motion for

summary judgment.[25]   All facts and inferences drawn from those facts must be viewed in the

light favorable to the party resisting the motion for summary judgment.[26]   "The court need

---

[24] Rule 56(c)(1) provides:
Supporting Factual Positions.  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A)  citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B)  showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1).  See also Celotex, 477 U.S. at 323, 106 S. Ct. at 2552–53.

[25] Anderson, 477 U.S. at 257, 106 S. Ct. at 2514–15.

[26] Scott v. Harris, 550 U.S. 372, 378, 127 S. Ct. 1769, 1774 (2007); Hibernia Nat'l Bank v. Carner, 997 F.2d 94, 97 (5th Cir. 1993).  The Supreme Court explained in Scott that:
> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to [the] facts.  As we have emphasized,  "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."

550 U.S. at 380, 127 S. Ct. at 1776 (emphasis in original) (quoting FED. R. CIV. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87, 106 S. Ct. 1348, 1356 (1986); Anderson, 477 U.S. at 247–48, 106 S. Ct. at 2510).

consider only the cited materials, but it may consider other materials in the record."[27]  Summary judgment motions permit the Court to resolve a lawsuit without the necessity of a trial if there is no genuine dispute as to any material facts and the moving party is entitled to judgment as a matter of law.[28]  "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."[29]

If  "the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."[30]  The movant "must demonstrate the absence of a genuine issue of material fact, but does not have "to negate the elements of the nonmovant's case."[31]  "If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response.[32]  On the other hand, if the movant meets its burden and the non-movant cannot provide some evidence to support its claim, summary judgment is appropriate.[33]

---

[27]  FED. R. CIV. P. 56(c)(3).

[28]  See Fields v. City of South Houston, 922 F.2d 1183, 1187 (5th Cir. 1991).

[29]  FED. R. CIV. P. 56(c)(2).

[30]  Duffie v. United States, 600 F.3d 362, 371 (5th Cir.) (citing Celotex, 477 U.S. at 325, 106 S. Ct. at 2554) (internal punctuation omitted), cert. denied, __ U.S. __, 131 S. Ct. 355 (2010).

[31]  Id.; Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005).

[32]  Quorum Health Res., L.L.C. v. Maverick Cnty. Hosp. Dist., 308 F.3d 451, 471 (5th Cir. 2002) (citing Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

[33]  Stahl v. Novartis Pharms. Corp., 283 F.3d 254, 263 (5th Cir.), cert. denied, 537 U.S. 824, 123 S. Ct. 111 (2002).

If the nonmovant cannot adequately defend against a motion for summary judgment, the remedy is a motion for relief under Rule 56(d), which provides:

> (d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.[34]

Discovery motions under Rule 56(d) are "broadly favored and should be liberally granted because the rule is designed to safeguard non-moving parties from summary judgment motions that they cannot adequately oppose."[35] To be entitled to a continuance of a summary judgment proceeding to obtain further discovery prior to a ruling on a motion for summary judgment, the party opposing the motion must demonstrate how additional time and discovery will enable the party to rebut the movant's allegations there are no genuine issue of material fact.[36]

---

[34] See FED. R. CIV. P. 56(d) (formerly, Rule 56(f)) (effective Dec. 1, 2010).

[35] Raby v. Livingston, 600 F.3d 552, 561 (5th Cir. 2010) (discussing Rule 56(f) (internal punctuation omitted); Culwell v. City of Fort Worth, 468 F.3d 868, 871 (5th Cir. 2006) (same); Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1267 (5th Cir. 1991) (explaining that under Rule 56(f), "[w]here the party opposing the summary judgment informs the court that its diligent efforts to obtain evidence from the moving party have been unsuccessful, a continuation of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course.") (citation and internal punctuation omitted), cert. denied, 502 U.S. 1059, 112 S. Ct. 936 (1992); see also Sapp v. Mem'l Hermann Healthcare Sys., 406 Fed. App'x 866, 869 (5th Cir. 2010) (Rule 56(d) is substantially the same as former Rule 56(f).).

[36] See Raby, 600 F.3d at 561 (request for stay "must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion") (citations and internal punctuation omitted).

## IV. DISCUSSION

### A.    Summary of Arguments

Defendants seek entry of judgment as a matter of law on plaintiffs' request for an award of damages based on a breach of the "good faith and best efforts" duty in the Agreement Contract, advancing four main grounds:

> 1.  Plaintiffs cannot prove their breach of good faith and best-efforts duty cause of action as alleged in count 6.
> 2.  Alternatively, Plaintiffs cannot prove their breach of good faith and best efforts duty cause of action alleged in count 6 beyond Defendants' alleged breach of a duty to pay for Agreement Contract products that Defendants sold.
> 3.  Alternatively, Plaintiffs cannot prove an amount of damages as alleged in count 6 other than for Defendants' failure to share earnings for products sold.
> [4].  Alternatively, Plaintiffs cannot prove an amount of damages caused by Defendants' alleged breach of a good faith and best efforts duty beyond Defendants' alleged breach of a duty to pay for Agreement Contract products that Defendants sold.[37]

More specifically, with respect to the first and second grounds, defendants advance six main contentions: (a) in count 6 of the third amended complaint, plaintiffs allege that "Defendant Frazier materially breached the Agreement Contract by failing to act in good faith and use his best efforts while executing his duties under the Agreement Contract;"[38] (b) "Plaintiffs judicially admit that 'the Agreement Contract memorialized Plaintiffs and Defendants' rights and obligations with respect to Flapper Valve Products;'"[39] (c) the Agreement Contract states, in part: "Each party shall bear one third of the expenses incurred in the enterprise and each party shall share one third of the earnings . . . .  Each party agrees to use his best efforts in performing his

---

[37]  Docket no. 330 at 6–7.

[38]  Id. at 2.

[39]  Id.

duties and at all times act in good faith;"[40] (d) "Plaintiffs have not shown that Defendants have otherwise breached any other Agreement Contract measure of performance that caused Plaintiffs' injury" other than the duty to share costs and earnings,[41] and "beyond the duty to share earnings for product sold" the good faith and best efforts duty is "unenforceably indeterminate;"[42] (e) "[t]here is no evidence that the parties' course of performance created any <u>other</u> good-faith/best-efforts duties that Plaintiffs allege Defendants breached or that it provides a sufficient standard for measuring Defendants' performance of good-faith/best-efforts duties" other than "[t]he parties' course of performance . . . to share costs and profits for Agreement Contract products sold;"[43] and (f) the allegations in count 6 limit the assertion that "Frazier materially breached the Agreement Contract by failing to act in good faith and use his best efforts" to Frazier "executing his duties under the Agreement Contract" (and not, for example, an implied-in-fact agreement).[44]  With respect to the third and fourth grounds, defendants make three main points: (a) plaintiffs' relevant discovery did not identify "any producing cause of damages or any damages"[45] and plaintiffs' economic expert, Todd Burchett, identified "damages due to defendants' alleged failure to pay Plaintiffs for Agreement Contract products that defendants

---

[40] <u>Id.</u>

[41] <u>Id.</u> at 4.

[42] <u>Id.</u>

[43] <u>Id.</u> at 4–5.

[44] <u>Id.</u> at 2, 5.

[45] <u>Id.</u> at 3.

sold;"[46] (b) Plaintiffs have "no evidence in support of Plaintiffs' breach of good-faith and best-efforts action other than for Defendants' alleged failure to pay for products sold;"[47] and (c) plaintiffs have "no evidence in support of any amount of damages allegedly due to Defendants' alleged breach of good faith and best efforts duty other than to share earnings for products sold."[48]

Plaintiffs response to defendants' motion also makes essentially four main points, but the points made by plaintiffs do not expressly correspond to the main grounds raised by defendants. Plaintiffs' central contention regarding the enforceability of the good faith and best efforts

---

[46] Id. Defendants also reference Burchett's identification of "duty to sell damages," but, as discussed infra in note 48, the Court has prohibited plaintiffs from introducing evidence on such damages. See also docket no. 317 at 44.

[47] Docket no. 330 at 6.

[48] Id. More completely, defendants argue that plaintiffs'
only damage assertions are stated in Burchett's reports, namely Plaintiffs' claims
for (1) damages due to Defendants' failure to pay for Agreement Contract
products sold and (2) duty to sell damages. The Court has prohibited Plaintiffs
from introducing evidence concerning the latter. There is no evidence in support
of Plaintiffs' breach of good-faith and best-efforts action other than for
Defendants' alleged failure to pay for products sold.
Id. Defendants' references to the Court prohibiting plaintiffs from introducing damages under a duty to sell, id. at 1, 6, is to the June 27, 2012 order that granted in part defendants' combined motion to strike, in part, plaintiffs' expert reports and motion in limine on expectation damages which in part, prohibited plaintiffs "from adducing at trial evidence of a duty to sell or any damages arising under such duty." Docket no. 317 at 43. On July 11, 2012, plaintiffs objected to portions of the June 27 order, namely:
Plaintiffs respectfully object to the Court's Order on the basis that:
1. Court erred in finding that Report II was not a supplemental report;
2. Court erred in striking the "Sale of 05's" Section of Report II and Report III;
3. Court erred in concluding Defendants had no further opportunity to conduct discovery of Burchett.
Docket no. 327 at 2. Plaintiffs did not object to the portions of the June 27 ruling that prohibited plaintiffs from adducing at trial evidence of a duty to sell or any damages arising under such duty. Id. at 1–9.

provision in the Agreement Contract is that Texas courts "do in fact enforce contractual best efforts clauses in a wide variety of circumstances,"[49] using a "'workable standard in a variety of circumstances,'"[50] and when the "best efforts provision . . . does not specify the performance to be required," courts "commonly hold the promisor to the standard of the diligence a reasonable person would use under the circumstances."[51]  Plaintiffs further argue that, "[w]hen held to the standard of the diligence a reasonable person would use under the circumstances, the evidence provides multiple examples that demonstrate Frazier did not live up to his obligations."[52] Specifically, plaintiffs identify four "examples" of "Frazier . . . not liv[ing] up to his obligations" to exercise objectively reasonable diligence under the Agreement Contract's good faith and best efforts provision: (a) the Agreement Contract provides that no party could transfer or assign his or her interest in the Agreement without the prior written consent of all other parties, but Frazier "sold" or "transferred" his interest in U.S. Patent Application No. 11/010,072 (the "'072 Application") to MII[53] without first obtaining the prior written consent of his "partners" or

---

[49]  Docket no. 385 at 4 (citing <u>DaimlerChrysler v. Manuel</u>, 362 S.W.3d 160, 170 (Tex. App.—Fort Worth 2012, no pet. h.); <u>CKB & Assocs., Inc. v. Moore McCormack Petroleum, Inc.</u>, 809 S.W.2d 577, 578 (Tex. App.—Dallas 1991, writ denied) (op. on reh'g); E. Farnsworth, ON TRYING TO KEEP ONE'S PROMISES: THE DUTY OF BEST EFFORTS IN CONTRACT LAW, 46 U. Pitt. L. Rev. 1, 7–8 (1984).

[50]  <u>Id.</u> at 4–5 (citing Farnsworth, <u>supra</u> note 49, at 12).

[51]  <u>Id.</u> at 5.

[52]  <u>Id.</u> at 9.

[53]  The "Patents in Suit" are U.S. Patent Nos. 7,287,596 ("'596 Patent"), 7,624,809 ("'809 Patent"), and 7,708,066 ("'066 Patent").  <u>See</u> docket no. 129 at 16.  The '596 Patent issued from the '072 Application.  Docket no. 129, exhibit C.

affording plaintiffs the opportunity to purchase the interest;[54] (b) the Agreement Contract

provides that each party shall bear one third of the expenses incurred in the enterprise and share

one third of the earnings, but (i) "Frazier was secretly selling flapper valves internationally and

did not disclose the sales until discovered by Plaintiffs in this action;"[55] (ii) "Frazier proceeded to

sell down hole flapper combo tools without 'let[ting] each other know when we're selling

something;'"[56] and (iii) in January 2007, instead of distributing to plaintiffs their individual one-

third share of earnings from "prior sales of flapper valve tools," Frazier "unilaterally decided to

spend the earnings" by purchasing 50 oversized 4½ inch round flappers, in contravention of

plaintiffs' advice to purchase only "one or two," "demonstrating Frazier's failure to act in good

faith."[57]  Plaintiffs cite cases regarding the construction of a written contract under Texas law,

including standards relevant to a determination of whether a contract is ambiguous, but do not

---

[54] Docket no. 385 at 1, 2, 4, 8.

[55] Id. at 1, 2–4, 8.

[56] Id. at 9.  The authority cited by plaintiffs for this contention is "Dkt. No. 384, Exhibit G attached thereto (Frazier Depo. I at 108:3–6; *see also id.* at 51:4–16)."  For clarity, the Court notes there is no exhibit G attached to the document filed as docket no. 384, but exhibit G, consisting of excerpts from a deposition of Frazier that includes the pages cited by plaintiffs, is included as exhibit G to plaintiffs' brief filed as docket no. 383.  See also infra note 61. Therefore, the Court has examined exhibit G to docket no. 383 in preparing this report; on page 51 in the noted lines, Frazier testifies, in sum, the Agreement Contract is the written expression of the parties' prior "handshake deal" and on page 108 in the noted lines, Frazier testifies, in sum, he does not know where in the Agreement Contract it provides that the parties would "let each other know when we're selling something," but Frazier understood it to be their "handshake" agreement.

[57] Docket no. 385 at 7.  Plaintiffs also argue that Frazier "promised" plaintiffs a distribution, "offered the pretext that his wife still needed to 'reconcile the books,'" "assured Hernandez and Klatt that the total distribution would be a '[$]150,000 distribution amongst the three of [them],'" "asked for more time to make the distribution and that '[b]y the end of January, [he'd] cut the checks,'" and then did not pay the distributions.  Id. at 6–7.

argue the Agreement Contract is ambiguous.[58] Plaintiffs emphasize that "Frazier admits the Agreement Contract speaks for itself," but also state "[t]he conduct of the parties clearly must be considered in determining the scope of the Agreement Contract."[59]

With respect to the portion of defendants' motion that seeks entry of judgment as a matter of law on damages, plaintiffs argue that, "other than from Defendants' failure to pay earnings shares to Plaintiffs for sales of flapper valves," if Frazier had informed them of his intended sale of his rights to MII, plaintiffs would have purchased them "making Plaintiffs 50% owners of the entire patent rights."[60] In support of their response, plaintiffs seek to "incorporate by reference" four of plaintiffs' prior submissions, along with all "exhibits attached" to those prior submissions.[61] Plaintiffs' response includes approximately seven footnotes that reference three

---

[58] Id. at 4–6.

[59] Id. at 6. Plaintiffs do not present argument or authority to show how the parties' course of conduct or "the scope" of the Agreement Contract is at issue regarding good faith and best efforts damages, other than the four "examples" of "Frazier . . . not liv[ing] up to his obligations" to exercise objectively reasonable diligence under the Agreement Contract's good faith and best efforts provision. Id. at 9.

[60] Id. at 9.

[61] Id. at 2. Plaintiffs seek to incorporate by reference: (1) plaintiffs' combined response to defendants' motion, and cross-motion, for partial summary judgment on plaintiffs' breach of contract claim based on Frazier's patent assignment, docket no. 358; (2) plaintiffs' response to corporate defendants' motion for partial summary judgment, docket no. 356; (3) plaintiffs' response to defendants' motion for partial summary judgment concerning defendants' past sales, docket no. 368; and (4) plaintiffs' response to defendants' motion for partial summary judgment concerning Agreement Contract scope, which plaintiffs cite as "Dkt. No. 384." Id. For clarity, the Court notes plaintiffs' "response" is not the document filed as docket no. 384; docket no. 384 is plaintiffs' motion to seal 11 exhibits submitted in support of its response to defendants' motion for partial summary judgment concerning Agreement Contract scope. When the Court granted the motion to seal, the sealed exhibits were filed as docket no. 387.

of the four identified prior submissions;[62] otherwise, plaintiffs' response does not explain why

any additional portion of the identified pleadings support their arguments in opposition to

defendants' motion for partial summary judgment on good faith and best efforts damages.[63]

On September 13, 2012, defendants filed their reply, advancing arguments in support of

their request for partial summary judgment.[64]  Defendants argue, in sum: (1) Frazier's 2005

assignment of his interest in the '072 Application to MII was not wrongful and, in any event,

plaintiffs accepted, waived, and/or ratified the assignment and its claim is time-barred; (2) there

is "no evidence" Frazier breached his "best efforts duty" when he tried to sell 4½" Magnum

Valves as well as 3½" Magnum Valves; (3) there is "no evidence Frazier made more than one

Magnum Valve international sale, namely the sale to Santos in 2011," and "no evidence this sale

was wrongful or caused Plaintiffs damages;" and (4) as "[t]here is no evidence" the Agreement

Contract set "an objective goal or standard" against which performance could be measured,

"[t]he 'best efforts' clause is not enforceable" and there is "no evidence Frazier breached it."[65]

## B.     Analysis

### 1.     preliminary matter

At the threshold, with respect to plaintiffs' request that plaintiffs be allowed to

incorporate by reference four of their prior submissions, with all exhibits in support, plaintiffs

---

[62]  Docket no. 385 at nn.43, 45–47, 49, 51, 54.  Three of the seven footnote references are to the entire document, without reference to page number, portion, or attachment.  See id. n.47 (citing "Dkt. No. 356"); n.49 (citing "Dkt. No. 358"), and n.51 (citing "Dkt. No. 358").

[63]  Id. at 1–9.

[64]  Docket no. 408.

[65]  Id. at 3–4.

have not represented that each of the prior submissions is completely relevant or cited authority to show it is the Court's responsibility to ferret through the prior submissions identified by plaintiffs to locate the aspects that may be relevant to the issues at hand, that is whether: defendants are entitled to entry of judgment as a matter of law on plaintiffs' breach of contract cause of action based on a breach of the good faith and best efforts duty. Nevertheless, to the extent plaintiffs' response to defendants' motion for summary judgment concerning no good faith and best efforts damages contains a footnote or other explicit reference to an incorporated pleading sufficient to show, by context or otherwise, why a matter discussed in the prior submission is relevant to the question of summary judgment on the noted aspect of count 6, the Court has considered the reference.[66]

### 2. breach

The Agreement Contract refers to plaintiffs and Frazier's best effort and good faith action in a single sentence included in the portion of the Agreement Contract captioned "Further Agreements."[67] The sentence states: "Each party agrees to use his best effort in performing his duties and at all times to act in good faith."[68]

Other provisions in the Agreement Contract address matters that arguably relate to any party's "duties." The Agreement Contract sets out that "[e]ach party shall bear one third of the expenses incurred in the enterprise and each party shall share one third of the earnings."[69] The

---

[66] See supra note 61.

[67] Docket no. 385, exhibit B at 2.

[68] Id.

[69] Id.

Agreement Contract specifies that if plaintiffs or Frazier "decides to sell his 1/3rd interest in the patent rights on the Magnum Valve™ and in this agreement, the other two owners may purchase the 1/3rd interest of the patent and of this agreement owned by the party selling . . . ."[70] The Agreement Contract has provisions regarding the party's handling of confidential or proprietary information.[71] The Agreement Contract also provides: "all parties are considered independent contractors;" "[e]ach party is interested only in the results obtained under this Agreement and has the general right of inspection and supervision in order to secure the satisfactory completion of the work;" "[n]o party shall have the control of the other party with respects to its hours, times, employment or the like;" "[u]nder no circumstances shall one party be deemed an employee of the other, nor shall either party act as an agent of the other party;" and "[e]ach party to this Agreement warrants that all obligations imposed on him by this Agreement shall be performed with diligence in a safe, competent, workmanlike manner and in compliance with any and all applicable statutes, rules and regulations."[72] The Agreement Contract provides it "shall be construed fairly and reasonably and not more strictly against the drafting party . . . ."[73]

Assuming the good faith and best efforts provision is enforceable, the Court addresses each of the four "examples" plaintiffs provide of "Frazier . . . not liv[ing] up to his

---

[70] Id. There is also a provision that addresses the death of an original owner while the Agreement Contract is in effect. Id. This provision is not at issue in any of the briefing submitted in connection with the dispositive motion addressed in this report.

[71] Id., exhibit B at 1–2.

[72] Id., exhibit B at 3.

[73] Id., exhibit B at 1.

obligation[]"[74] to exercise objectively reasonable diligence under the Agreement Contract's good faith and best efforts provision. With respect to Frazier's transfer of certain of his patent rights to MII, plaintiffs have not presented summary judgment evidence sufficient to raise a genuine issue of material fact to show Frazier breached the Agreement Contract when he transferred his patents rights in the Magnum Valve to MII.[75] A companion report filed on September 14, 2012 recommends Frazier's "Motion for Partial Summary Judgment on Plaintiffs' Breach of Contract Claim Based on Frazier's Patent Assignment"[76] be granted, noting that plaintiffs, in the briefing on that dispositive motion, had not argued or presented authority to show the Agreement Contract was ambiguous and finding that "because Frazier was not transferring to MII Frazier's '1/3rd interest in the patent rights on Magnum Valve™ *and* in this agreement,' the Agreement Contract did not require Frazier to first obtain the written consent of plaintiffs."[77] In any event, as discussed further below, plaintiffs do not contest that MII has reassigned the transferred patent interests back to Frazier and have not otherwise demonstrated how they were damaged or what

---

[74] Id. at 9.

[75] Plaintiffs do not contest the following chronology relating to Frazier's assignment to MII: The Agreement Contract was executed on November 10, 2004 by the specified "owners of the Patent rights on the 'Magnum Valve.™'" See docket no. 129 at 6–7, ¶ 29 and exhibit B at 1; docket no. 385, exhibit B. Approximately one month after signing the Agreement Contract, on December 9, 2004, Frazier filed the '072 Application. Docket no. 129 at 7–8, ¶ 33; docket no. 385 at 8 and n.49. On February 14, 2006, approximately 14 months after filing the '072 Application, Frazier transferred his ownership in the '072 Application to MII, as well as "any and all direct and indirect divisions, continuations and continuations-in-part of said application and any all Letters [of] Patent . . . which may be granted therefore and thereon . . . ." See docket no. 319 at 2 and exhibit 1; docket no. 129 at 9, ¶44; docket no. 358 at 4; docket no. 385 at 1, 8 and n.49.

[76] Docket no. 319.

[77] Docket no. 413 at 23–24.

other relief they may be entitled to seek from a jury or the Court based on the transfer.

With respect to "Frazier . . . secretly selling flapper valves internationally,"[78] plaintiffs have not presented summary judgment evidence to show Frazier made more than one Magnum Valve international sale, that is, the sale to Santos in 2011, which was disclosed to plaintiffs in early 2011 and for which defendants paid plaintiffs their full earnings share. As discussed further below, to the extent the Santos sale relates to damages from Frazier's alleged failure to pay for covered products sold, the damages are not addressed in this report. But, plaintiffs have not demonstrated how they were damaged, or what other relief they may be entitled to seek from a jury or the Court, with respect to the good faith and best efforts provision. Plaintiffs have not demonstrated the Santos sale—or any other sale—caused them damages apart from an alleged failure to pay for covered products sold.

With respect to plaintiffs' contentions that "Frazier proceeded to sell down hole flapper combo tools without 'let[ting] each other know when we're selling something;"[79] and in January 2007, instead of distributing to plaintiffs their individual one-third share of earnings from "prior sales of flapper valve tools," Frazier "unilaterally decided to spend the earnings" by purchasing 50 oversized 4½" round flappers, in contravention of plaintiffs' advice to purchase only "one or

---

[78]  Docket no. 385 at 1.

[79]  Id. at 9. The authority cited by plaintiffs for this contention is "Dkt. No. 384, Exhibit G attached thereto (Frazier Depo I at 108:3–6; *see also id.* at 51:4–16)." For clarity, the Court notes there is no exhibit G attached to the document filed as docket no. 384, but exhibit G, consisting of excerpts from a deposition of Frazier that includes the pages cited by plaintiffs, is included as exhibit G to plaintiffs' brief filed as docket no. 383. See also supra note 61. The Court has examined exhibit G to docket no. 383 in preparing this report; on page 51 in the noted lines, Frazier testifies, in sum, the Agreement Contract is the written expression of the parties' prior "handshake deal" and on page 108 in the noted lines, Frazier testifies, in sum, he does not know where in the Agreement Contract it provides that the parties would "let each other know when we're selling something," but Frazier understood that to be their "handshake" agreement.

two,"[80] plaintiffs have not presented summary judgment evidence to show that Frazier's 2006 purchase of parts for the 4½" round flapper valves or parts for the 3½" Magnum Valves breached the Agreement Contract. Plaintiffs have challenged Frazier's wisdom in purchasing "50 oversized round flappers,"[81] but they have not raised a genuine issue of material fact to show that Frazier did not have the authority to make the purchases under the Agreement Contract or plaintiffs were not obligated to pay their share of the expenses. Plaintiffs submit an excerpt from Hernandez's deposition in which Hernandez testified that plaintiffs "felt" Frazier "had done us wrong" by purchasing "50 4-1/2 flapper tools, the same ones that he said were obsolete" instead of just building "'one or two'" and "'see how they look, how they work, see if we can get them in the hole, see if there's any interest before we place a large order,'" but Frazier purchased 50 of the tools and, therefore, plaintiffs and Frazier did not receive a distribution at the end of 2006 or in January 2007.[82] Hernandez does not testify that Frazier first stated, or knew, that the 4½" flapper tools were "obsolete" when he purchased them. Plaintiffs also attach a copy of a July 9, 2012 email from Klatt to a person at MOTI that explained Klatt would pick up "the old flapper equipment that has been deemed obsolete."[83] But, Klatt's email, dated 18 months after the initiation of this suit, does not establish when Frazier or any other party to this case determined

---

[80] Docket no. 385 at 7. Plaintiffs also argue that Frazier "promised" plaintiffs a distribution, "offered the pretext that his wife still needed to 'reconcile the books,'" "assured Hernandez and Klatt that the total distribution would be a '[$]150,000 distribution amongst the three of [them],'" "asked for more time to make the distribution and that '[b]y the end of January, [he'd] cut the checks,'" and then did not pay the distributions. Id. at 6–7.

[81] See id. at 7 (emphasis removed).

[82] Id., exhibit C at 2–3.

[83] Id., exhibit D.

the tools were "obsolete."[84]  Plaintiffs have not contested defendants' contention that "Plaintiffs

did not seek Frazier's approval to make their 4-1/2" Brahma Valve variant of Magnum Valves."[85]

Plaintiffs have not adduced summary evidence to show that it was so clear at the time of

Frazier's acquisition of the 4½" flapper tools, by an objective or subjective standard, that 4½"

Magnum Valves would not sell, that Frazier exceeded his discretion as an "independent

contractor" in purchasing the 4½" flapper tools.

Other than their summary judgment evidence and argument regarding the 4½" round

flapper valves, plaintiffs have presented no summary judgment evidence to show "Frazier

proceeded to sell down hole flapper combo tools without 'let[ting] each other know when we're

selling something'"[86] or was "secretly selling flapper valves internationally."[87]  Plaintiffs have

---

[84]  Id.

[85]  Docket no. 408 at 2.

[86]  Docket no. 385 at 9.  As noted, the evidence plaintiffs cite in support of their contention Frazier sold down hole flapper combo tools without notifying plaintiffs are portions of a deposition of Frazier in which Frazier testifies, in sum, that he understood the Agreement Contract to be the written expression of the parties' prior "handshake deal," and the "handshake" agreement included the parties agreeing to "let each other know when we're selling something," an obligation he believed continued under the Agreement Contract.  See supra note 56.  Nothing in the cited portions of Frazier's deposition, or plaintiffs' summary judgment argument evidence, defines "down hole flapper combo tools," provides evidence to show Frazier sold them, or demonstrates that Frazier owed plaintiffs any money as a result of the sales.

[87]  Docket no. 385 at 1, 8.  Plaintiffs' arguments regarding undisclosed sales consist of approximately two sentences: the representation in the "issue presented" section of their response that "Frazier was secretly selling flapper valves internationally and did not disclose the sales until discovered by Plaintiffs in this action," id. at 1; and the contention in "Other examples of Frazier's breach of his best efforts requirement and lack of good faith acts" that, notwithstanding the Agreement Contract and Frazier's description of the "handshake agreement," "Frazier was secret selling flapper valves internationally and did not disclose the sales until discovered by Plaintiffs' in this action, id. at 8.  The first reference is not supported by any citation to evidence. The second reference is supported by one footnote that states: "See Dkt. No. 356."  Id. at 8 n.47. The document filed as docket number 356 is plaintiffs' 23-page response to the *corporate*

22

submitted no evidence to show that it was so clear in 2006 that 4½" Magnum Valves would not be used or sold that Frazier's purchase of the valves exceeded his discretion, under the Agreement Contract, as an "independent contractor" or otherwise was a breach of the Agreement Contract, including the "only interested in results" provision, the requirement that Frazier perform his obligations "with diligence in a safe, competent, workmanlike manner," or the good faith and best efforts provision. Plaintiffs have not raised a genuine issue of material fact to preclude entry of judgment as a matter of law.

In sum, plaintiffs have not adduced evidence sufficient to show that a reasonable jury could find Frazier breached his agreement "to use his best effort in performing his duties and at all times to act in good faith."[88] Defendants are entitled to entry of judgment as a matter of law on the portion of the breach of contact claim alleged in count 6 of the third amended complaint that alleges a breach of the good faith and best efforts provision in the Agreement Contract. Entry of such a judgment will not preclude plaintiffs from pursuing their breach of contract claim asserted in count 6 of the third amended complaint that asserts defendants breached a duty to pay plaintiffs for items covered by the Agreement Contract that defendants sold.

---

*defendants'* motion for summary judgment, supported by exhibits A–Y. As noted, the Court has recommended that the corporate defendants' motion be granted and each of plaintiffs' claims asserted against them, as well as plaintiffs' alter ego theory, be dismissed. See docket no. 410. With respect to plaintiffs' contentions regarding the sale of Magnum Valves by Frazier and the corporate defendants, the report noted, in part, that plaintiffs had not

> present[ed] any argument to explain how specific evidence raises a genuine issue of material fact to show Frazier and the corporate defendants "conspired" to conceal Magnum Valve sales, why a reasonable juror might conclude the Santos sale was "concealed," what quantifiable damages plaintiffs suffered as a result of the conspiracy, or why the economic loss rule does not defeat plaintiffs' conspiracy claim.

Id. at 45–46.

[88] Docket no. 385, exhibit B at 2.

### 3.    damages

Even if plaintiffs' evidence and argument were to be deemed sufficient to raise a material factual dispute sufficient to preclude entry of judgment at this time on the question of whether defendants breached the good faith and best efforts provision of the Agreement Contract, defendants are entitled to judgment as a matter of law regarding the scope of damages to which plaintiffs may be entitled.  More specifically, in response to defendants' direct challenge that "[t]here is no evidence in support of Plaintiffs' breach of good-faith and best-efforts action other than for Defendants' alleged failure to pay for products sold,"[89] plaintiffs present no evidence of good faith/best efforts damages or suggest that they will prove any amount of damages other than for defendants' failure to share earnings for products sold.[90]  Defendants are entitled to entry of judgment as a matter of law that plaintiffs are not entitled to an award of any damages based on Frazier's alleged breach of the good faith and best efforts provision in the Agreement Contract other than for defendants' failure to pay for covered products sold.

### 4.    enforceability of good faith and best efforts provision

Fundamentally, in the context of plaintiffs' argument and evidence regarding Frazier's alleged conduct that show he did not exercise good faith or use his best efforts, the best efforts clause in the Agreement Contract is not enforceable beyond the duty to share one third of the earnings and expenses relating to "the enterprise,"[91] which the parties apparently agree (for the purposes of the motion addressed in this report), is the sale of Magnum Valve™ related

---

[89]  Docket no. 330 at 5–6; see also id. at 3.

[90]  See docket no. 385 at 1–10.

[91]  Id., exhibit B at 2.

products.[92]  The best efforts clause in the Agreement Contract does not provide an "'objective

measure' of performance"[93] apart from the agreement to share expenses and earnings.[94]  The

Agreement Contract expressly provides the parties are independent contractors, "[e]ach party is

interested only in the results obtained under this Agreement," and no party: "is an employee of

the other party," may be controlled in his work by another party, is an agent of another party.[95]

---

[92]  Defendants' motion references "Agreement Contract products," see docket no. 330 at 3, and is not premised on any distinctions that may be able to be drawn about valves, tools, parts, or products that may or may not be related to the Magnum Valve or fall within the scope of the "enterprise" referenced in the Agreement Contract, see generally, id.

[93]  Kevin M. Ehringer Enters., Inc. v. McData Svcs. Corp., 646 F.3d 321, 327 (5th Cir. 2011) ("'best efforts' provisions may be enforceable under Texas law if they provide some kind of objective goal or guideline against which performance is to be measured").  Further elaborating on the enforceability of best efforts clauses, the Fifth Circuit stated:

> In CKB & Assocs.[, Inc. v. Moore McCormack Petroleum, Inc., 809 S.W.2d 577 Tex.App.—Dallas 1991, writ denied], the court noted that "to be enforceable, a best efforts contract must set some kind of goal or guideline against which best efforts may be measured."  Id.  If the contract sets out such goal or guideline, "[a] contracting party that performs within the guidelines fulfills the contract regardless of the quality of its efforts.  When a party misses the guidelines, courts measure the quality of its efforts by circumstances of the case . . . and by comparing the party's performance with that of an average, prudent, comparable [party]."  Id. at 582 (citations omitted).
>     In interpreting CKB & Associates, we have held that the term "goal" or "guideline" need not be read narrowly.  See Herrmann Holdings Ltd. [v. Lucent Tech. Inc., 302 F.3d 552, 559 (5th Cir. 2002)].  In Herrmann Holdings, the contractual language at issue stated that a party was to "use its reasonable best efforts to prepare, file and cause to become effective, as promptly as practicable . . . the Registration Statement . . . ."  Id. at 556.  We concluded that the phrase "as promptly as practicable" was an objective goal making the "best efforts" clause enforceable.  Id. at 559–60.  Therefore, we held that the plaintiff could pursue a claim for breach of this clause.  Id. at 561.

Id. at 326.

[94]  See docket no. 385, exhibit B at 2.

[95]  Id., exhibit B at 3.

The Agreement provides, in a passage not highlighted by plaintiffs, that each party "warrants that all obligations imposed on him by this Agreement shall be performed with diligence in a safe, competent, workmanlike manner."[96] But, the only objective standard by which the plaintiffs' complaints of lack of good faith and best efforts in the "interested only in the results" Agreement Contract may be measured is the obligation to share expenses and earnings.[97] In DaimlerChrysler Motors Co., LLC v. Manuel, a case cited by plaintiffs,[98] the Texas state court found the contract as a whole "expressly contemplate[d] establishing the South Arlington dealership by January 1, 2001," the specific date was an objective standard against which performance could be measured, and there was a fact question about whether DaimlerChrysler used its best efforts when the dealership opened a year late.[99] Here, the only objective goal or standard in the Agreement Contract concerning plaintiffs' alleged breaches of the good faith and best efforts provision is the obligation to share expenses and earnings incurred or earned "in the enterprise."[100] As a matter of law, plaintiffs may not pursue a breach of contract cause of action against defendants for breach of the good faith and best efforts provision. Plaintiffs' contention that defendants breached their duty to pay plaintiffs for covered products that defendants sold is fully able to be pursued in the remaining aspects of plaintiffs' breach of contract cause of action alleged in count

---

[96] Id.

[97] Id. at 2, 3. As noted, plaintiffs argue the parties' course of conduct under the Agreement Contract may be considered, but do not adduce evidence to show the parties' course of conduct created any other sufficient standard for measuring each party's good faith and best efforts other than the sharing of expenses and earnings. See id. at 6.

[98] Id. at 4 n.18 (citing 362 S.W.3d 160, 170 (Tex. App.—Ft. Worth 2012, no pet. h.)).

[99] 362 S.W. 3d at 173–74.

[100] Docket no. 385, exhibit B at 2.

6 of the third amended complaint.

**5.      summary**

For the reasons discussed, defendants are entitled to judgment as a matter of law that: plaintiffs may not pursue a breach of contract cause of action against defendants for breach of the good faith and best efforts provision; plaintiffs are not entitled to an award of any damages based on Frazier's alleged breach of the good faith and best efforts provision in the Agreement Contract other than for defendants' failure to pay for covered products sold; and plaintiffs have not adduced sufficient evidence to show that a reasonable jury could find Frazier breached his agreement to use his best effort and act in good faith to be entitled to an award of damages from that breach. The remaining aspects of plaintiffs' breach of contract cause of action stated against Frazier in count 6 of the third amended complaint are not affected by this recommended ruling, and, specifically, this ruling does not affect plaintiffs' breach of contract claim alleged in count 6 of the third amended complaint that asserts defendants breached a duty to pay plaintiffs for items covered by the Agreement Contract that defendants sold.[101]

## V.  RECOMMENDATIONS

Based on the foregoing discussion, it is recommended that "Defendants' Motion for Partial Summary Judgment Concerning No Good Faith and Best Efforts Damages"[102] be **GRANTED in part and DENIED in part** as follows:

- the portions of defendants' motion that seek summary judgment in favor of MOTI and MII should be **denied as moot** in light of the recommendation made in a

---

[101]  But, to be clear, other aspects of plaintiffs' breach of contract cause of action against any defendant may be affected by other rulings or recommended rulings.

[102]  Docket no. 330.

companion report on the "Corporate Defendants' Motion for Summary Judgment"[103] which, in sum, recommends that each of plaintiffs' claims as well as plaintiffs' alter ego or "agency" theory be dismissed, as stated against MOTI and MII;

● the portions of defendants' motion that seek summary judgment on the good faith and best efforts damages provision in the Agreement Contract that relate to whether: (a) Frazier's patent assignment breached the Agreement Contract as alleged in count 6 of the third amended complaint, or (b) defendants' breached their fiduciary duties as alleged in count 10 of the third amended complaint, may be **denied as moot** in light of the recommendations made in the companion reports on "Defendants' Motion for Partial Summary Judgment on Plaintiffs' Breach of Contract Claim Based on Frazier's Patent Assignment"[104] and "Defendants' Motion for Partial Summary Judgment Concerning No Fiduciary Duty;[105]

● the portions of defendants' motion that seek summary judgment in favor of defendant Frazier on: (a) plaintiffs' claim of breach of the good faith and best efforts provision in the Agreement Contract, and (b) for good faith and best efforts damages as alleged in count 6 of the third amended complaint, be **granted** and that portion of the breach of contract claim alleged in count 6 be **dismissed**; and

● in any respect other than as expressly granted, defendants' motion be **denied**.

## VI.  INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO OBJECT/APPEAL

The United States District Clerk shall serve a copy of this Report and Recommendation on all parties by either: (1) electronic transmittal to all parties represented by an attorney registered as a Filing User with the Clerk of Court pursuant to the Court's Procedural Rules for Electronic Filing in Civil and Criminal Cases; or (2) by certified mail, return receipt requested, to any party not represented by an attorney registered as a Filing User.

---

[103]  Docket no. 410.

[104]  Docket no. 413.

[105]  Docket no. 412.

As provided in 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b), any party who desires to object to this Report must **file** with the District Clerk and **serve** on all parties and the Magistrate Judge written Objections to the Report and Recommendation within 14 days after being served with a copy, unless this time period is modified by the District Court. A party filing Objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the District Court need not consider frivolous, conclusive or general objections.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Report will bar the party from receiving a *de novo* determination by the District Court.[106] Additionally, a party's failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this Report will bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.[107]

**SIGNED** and **ENTERED** this 21st day of September, 2012.

*Pamela A. Mathy*

**PAMELA A. MATHY**
**UNITED STATES MAGISTRATE JUDGE**

---

[106] See Thomas v. Arn, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985).

[107] Acuna v. Brown & Root Inc., 200 F.3d 335, 340 (5th Cir. 2000); Douglass v. United Serv. Auto. Ass'n., 79 F.3d 1415, 1428 (5th Cir. 1996).

29