IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ALFRED L. HERNANDEZ, an individual, and DUDLEY I. KLATT, an individual, | ) ) ) ) | CV. NO. SA:11-CV-0009-DAE |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| W. LYNN FRAZIER, an individual, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT CONCERNING LIMITATIONS

On February 5, 2014, the Court heard oral argument on a Motion for

Summary Judgment Concerning Limitations ("Motion") filed by Defendant W.

Lynn Frazier ("Defendant" or "Frazier").  ("Mot.," Dkt. # 496).  Michael

Villarreal, Esq., represented Plaintiffs Alfred L. Hernandez ("Hernandez") and

Dudley I. Klatt ("Klatt") (collectively, "Plaintiffs") at the hearing; Mark Miller,

Esq., and Matt Vandenberg, Esq., represented Defendant at the hearing.  Upon

careful consideration of the memoranda in support of and opposition to

Defendant's Motion, as well as the arguments presented at the hearing, the Court

**GRANTS IN PART** and **DENIES IN PART** Defendant's Motion.

1

<u>BACKGROUND</u>

I.   <u>Factual Background</u>

This case concerns a series of patents involving technology used in oil and gas wells.  On November 10, 2004, Plaintiffs and Defendant entered into, executed, and notarized an Agreement Contract to sell Magnum Valves, a downhole tool used in the production phase of recovering oil and gas from wells. (Dkt. # 497, Ex. B.)   The Agreement Contract provided that starting in 2004, "[e]ach party shall bear one-third of the expenses incurred in the enterprise and each party shall share one third of the earnings."  (<u>Id.</u>)  Defendant was responsible for selling and distributing the Magnum Valves.  ("Hernandez Dep.," Dkt. # 496-1, Ex. 3 16:20–22.)  Although the parties agreed on a one-third split of liabilities and earnings, the Agreement did not expressly require any specific time to remit the earnings.   Rather, the parties later agreed on quarterly accountings sometime in 2005.  ("Frazier Dep.," Dkt. # 497, Ex. C 24:16–24.)  Given that Defendant was responsible for selling the Magnum Valves, he was also responsible for accounting the expenses and the earnings between himself, Hernandez, and Klatt on a quarterly basis.  (<u>See</u> Hernandez Dep. 17:18–25, 18:1–12.)  Patricia Frazier, Defendant's wife, served as the bookkeeper.  (Frazier Dep. 20:24–21:5.)

Near the end of 2006, Defendant informed Plaintiffs that he would be making an earnings distribution of approximately $50,000 each to Hernandez and

Klatt just prior to Christmas.  (Hernandez Dep. 23:6–18.)  He asked Plaintiffs to come by his offices before the end of the year so he could "sign the checks and everybody will have a good Christmas."  (Id. 23:14–17.)  When Plaintiffs arrived, there were no checks.  (Id. 23:17–18.)  According to Plaintiffs, Defendant asked them to come back after the New Year to allow his wife time to complete the accounting.  (Dkt. # 497 at 3.)

In mid-January 2007, Plaintiffs again approached Defendant to inquire about the $50,000 distribution.  (Id. 23:18–23.)  Defendant explained that his wife needed to "reconcile the books," but assured that there would be a $150,000 distribution among the three of them.  (Id.)  He asked if he could have until the end of January 2007 to "cut the checks," to which Plaintiffs agreed.  (Id. 23:24–25.)  When Plaintiffs returned to Defendant at the end of January, he informed them that they would not receive the distribution as promised.[1]  (Id. 18:1–5.)

II.   Procedural Background

This case was initiated on January 5, 2011 when Plaintiffs filed their original Complaint.  (Dkt. # 1.)  One of Plaintiffs' claims in their Third Amended

---

[1] According to Plaintiffs, Defendant was unable to pay the distribution because he used the surplus money to purchase an unnecessary part for the Magnum Valves. (See Dkt. # 497 at 8 ("It was then that Frazier refused to fulfill his promise of a distribution and instead informed Plaintiffs of his unilateral decision to purchase obsolete products.").)

Complaint asserts a cause of action for breach of contract:

> 121. Defendant Frazier again materially breached the Agreement Contract when Defendant Frazier notified Plaintiffs that Defendant Frazier would not be remitting accountings or distributing earnings from sales of the Hydraulic Flapper Valve to Plaintiffs as required by this Agreement Contract.

> 122. Defendant Frazier further materially breached the Agreement Contract by not accounting and distributing earnings to Plaintiffs from sales of the Flapper Valve Products.

> . . . .

> 127. As a result of Defendant Frazier's material breaches, Plaintiffs have been damaged in an amount yet to be determined, but which will be proven at trial.

> 128. Plaintiffs seek and request recovery of their actual damages or loss caused by Defendant Frazier's material breaches of the Agreement Contract.

("TAC," Dkt. # 129 ¶¶ 121–22, 127–28.)  Plaintiffs did not specify the dates of Defendant's alleged breaches, nor did they specify the amounts allegedly owed as a result of Defendant's breaches.

On February 6, 2013, Defendant filed a Motion for Leave to File a Motion for Partial Summary Judgment Concerning Limitations to assert that Plaintiffs' breach-of-contract claims were barred by Texas's four-year statute of limitations.  (Dkt. # 483.)  On September 11, 2012, this Court granted Defendant's Motion for Leave.  (Dkt. # 495.)  Defendant's Motion for Partial Summary Judgment Concerning Limitations is now before the Court.  On September 25,

2013, Plaintiffs filed a Response.  ("Resp.," Dkt. # 497.)

STANDARD OF REVIEW

Summary judgment is granted under Federal Rule of Civil Procedure 56 when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Cannata v. Catholic Diocese of Austin, 700 F.3d 169, 172 (5th Cir. 2012). The main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact.  Id. at 323.  If the moving party meets this burden, the non-moving party must come forward with specific facts that establish the existence of a genuine issue for trial. ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc., 699 F.3d 832, 839 (5th Cir. 2012).  In deciding whether a fact issue has been created, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment."  Brown v. City of Hous., 337 F.3d 539, 541 (5th Cir. 2003).  "Where the record taken as a whole could not lead a rational trier of

fact to find for the non-moving party, there is no 'genuine issue for trial.'"

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)

(quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

<u>DISCUSSION</u>

   Defendant argues that Plaintiffs' breach-of-contract claim for monies

owed in 2005 and 2006 is barred by Texas's four-year statute of limitations

because he breached (and thus caused Plaintiffs' cause of action to accrue) prior to

January 5, 2007—four years prior to Plaintiffs bringing suit.  Plaintiffs counter that

Defendant did not breach until after January 5, 2007—rendering the

statute-of-limitations defense inapplicable to Plaintiffs' breach-of-contract claim.

   Texas law imposes a four-year statute of limitations to assert a claim

for breach of contract.  Tex. Civ. Prac. & Rem. Code § 16.004(a)(3).  Therefore, a

party asserting a breach-of-contract claim must sue no later than four years after

the day the claim accrues.  Smith v. Ferguson, 160 S.W.3d 115, 123 (Tex. App.

2005).

   Under Texas law, the statute-of-limitations defense is "an affirmative

defense that must be specifically pleaded and proved."  Intermedics v. Grady, 683

S.W.2d 842, 845 (Tex. App. 1984).  Thus, the party asserting a limitations defense

bears the burden of proof to not only establish the applicability of the limitations

statute, but also prove when the opponent's cause of action accrued in order to

6

demonstrate the bar of limitations.  See id.; see also In re Hinsley, 201 F.3d 638, 645 (5th Cir. 2000).

"It is well-settled law that a breach of contract claim accrues when the contract is breached." Stine v. Stewart, 80 S.W.3d 586, 592 (Tex. 2002).  "A breach of contract occurs when a party fails or refuses to do something he has promised to do." Capstone Healthcare Equip. Servs., Inc. ex rel. Health Sys. Grp., L.L.C. v. Quality Home Health Care, Inc., 295 S.W.3d 696, 699 (Tex. App. 2009) (citing Mays v. Pierce, 203 S.W.3d 564, 575 (Tex. App. 2006)).  In other words, a breach of contract cause of action accrues "when the claimant has notice of facts sufficient to place him on notice of the breach." Davis Apparel v. Gale-Sobel, a Div. of Angelica Corp., 117 S.W.3d 15, 18 (Tex. App. 2003); see also Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 514 (Tex. 1998) ("A cause of action generally accrues, and the statute of limitations begins to run, when facts come into existence that authorize a claimant to seek a judicial remedy.").

Under Texas law, the question of when a cause of action accrues is a matter of law for a court to decide.  Holy Cross Church of God in Christ v. Wolf, 44 S.W.3d 562, 567 (Tex. 2001) ("[W]hen a cause of action accrues is a question of law, not fact.").  As the Supreme Court of Texas has clarified,

> [T]he question [of] when a cause of action accrues is a judicial one,
> and to determine it in any particular case is to establish a general rule

> of law for a class of cases, which rule must be founded on reason and
> justice. . . . In the absence of legislative definition and specification,
> the . . . courts have often been called upon to delineate the statute;
> they have consciously sought to apply it with due regard to the
> underlying statutory policy of repose, without, however, permitting
> unnecessary individual injustices.

Moreno v. Sterling Drug, Inc., 787 S.W.2d 348, 351 (Tex. 1990) (quoting Fernandi
v. Strully, 173 A.2d 277, 285 (N.J. 1961)).

Accordingly, this Court must decide when Plaintiffs' cause of action
for breach of contract accrued (i.e., when Defendant breached) in order to
determine whether the action is barred by Texas's four-year statute of limitations.
If it accrued before January 5, 2007—four years prior to Plaintiffs bringing suit—
Plaintiffs' cause of action is barred. If, however, it accrued after January 5, 2007,
the statute-of-limitations defense does not apply.

A.    December 2006

Defendant argues that because Plaintiffs anticipated full payment for
sales of Magnum Valves in December 2006, and Defendant did not pay, Plaintiffs'
breach-of-contract claim accrued in December 2006 and is thus barred by the
four-year statute of limitations. (See Mot. at 5–6.) Defendant primarily relies on
the following admission contained in Plaintiffs' briefing to the Court:

> At the end of 2006, Plaintiffs were anticipating a distribution from
> Frazier for prior sales of flapper valve tools. Plaintiffs had anticipated
> a distribution of approximately $50,000 each for the holidays from
> flapper sales. Frazier asked Plaintiffs to come by Defendants' offices
> before the end of the year so he could "sign the checks and everybody

8

will have a good Christmas [2006]."  When Plaintiffs arrived, there
were no checks.

(Dkt. # 385-3 (quoting Hernandez Dep. 23–24).)  According to Defendant, because

Plaintiffs anticipated Frazier would pay this $50,000 ($100,000 for the two

Plaintiffs) during Christmas 2006, and Frazier did not pay, Plaintiffs' cause of

action accrued during Christmas 2006 and is therefore time barred.  (Mot. at 5–6.)

However, Defendant's failure to distribute the earnings in December

2006 did not constitute a breach because Defendant's time for performance had not

yet occurred.  See Restatement (Second) of Contracts § 235 cmt. b

("Non-performance is not a breach unless performance is due." (emphasis added)).

Defendant's "Christmas 2006" argument may have held water had it not been for

the fact that Plaintiffs and Defendant had an agreement to distribute earnings on a

quarterly basis, whereby after each quarter, Defendant would remit two-thirds of

the profits to Plaintiffs (one-third to each Plaintiff).   (See Resp. at 2 ("Hernandez,

Klatt, and Frazier agreed that accounting and distribution would be done on a

quarterly basis." (citing Patricia Frazier Dep. 24:16–24)); Mot. at 4 (admitting that

Defendant had a duty to pay Plaintiffs their share of the quarterly earnings "at the

end of each calendar quarter" (emphasis added)).)

At the hearing, counsel for Defendant, Mr. Miller, again repeatedly

underscored that Plaintiffs judicially admitted that payments are made on a

quarterly basis:

The Court: When -- under the agreement, these payments were due on a quarterly basis; am I right?

Mr. Miller: Yes, Your Honor.  That's judicially admitted.

. . . .

The plaintiffs' response judicially admits that payments are to be made on a quarterly basis.

. . . .

Plaintiffs' first judicial admission is that Hernandez, Klatt, and Frazier agreed that accounting and distribution would be done on a quarterly basis.  That's their judicial admission.  Fifth Circuit law says it cannot be contradicted.  And, thankfully, it's consistent with the plaintiffs' only damage model, which is Tab 2, which shows payment will be made on a quarterly basis.

(Motion for Summary Judgment Tr. Hr'g 3:3–6, 3:21–23, 5:22–6:4 Feb. 5, 2014.)

In what the Court can only attribute to Plaintiffs' attempt to argue that the Court should equitably toll the statute of limitations, Plaintiffs ironically argued at the hearing that the parties did not have the same agreement concerning quarterly accountings:

Mr. Villarreal: Now, I would like to go back to the -- the quarterly accounting because I think this is important.  Mr. Miller, he claims the judicial admissions were -- were made that the parties agreed to -- to quarterly accounting.  Well, I -- I think both parties have different definition of what the quarterly accounting is.  Because, from what the records clearly show on summary judgment, the Exhibits E and F and Exhibit G to Plaintiffs' Response, the Defendant's accounting, these have several years in those accountings, but they're broken down into quarterly amounts.  So you see that --

The Court: So they weren't due every quarter.  What you're saying is is that their understanding was that they weren't -- the quarterly

accountings weren't due every quarter, but they were broken up into quarters that were due every so often?

Mr. Villareal: They were due --

The Court: Is that what you're saying?

Mr. Villareal: That's -- that's what I'm saying, Your Honor. . . .

(Id. 20:1–19.)  Plaintiff later explained that Defendant only remitted two accountings and both were tendered to Plaintiffs in June 2007.  (Id. 23:10–19.) The first accounting was for 2005, but included figures for 2004 and broke up the amounts for 2005 into four quarters.  (Id.)  The second accounting was for 2006. (Id.)  Plaintiffs argued that because the financial accountings were "solely under the exclusive control of Mr. Frazier," they were "at his mercy" regarding when they were going to receive a distribution or an accounting.  (Id. 23:22–25.) Plaintiffs clarified that their "quarterly accounting" assertion was only because after Plaintiffs took over the sales of the flapper valves in 2008, they started submitting quarterly accountings to Defendant.  (Id. 24:18–25.)

Even though Plaintiffs attempted to retract their "quarterly accounting" assertions at the hearing, Plaintiffs have made several judicial admissions clearly acknowledging that the parties had an agreement to submit quarterly accountings.  In fact, in one of Plaintiffs' responses to one of Defendant's earlier motions for summary judgment regarding the Agreement Contract's scope, Plaintiffs averred:

Beginning in the fall of 2004, after Hernandez, Klatt and Frazier had discussed the down hole flapper valve tool and expenses had begun to be incurred in the product's development, Hernandez, Klatt and Frazier agreed that accounting and distribution would be done on a quarterly basis.

(Dkt. # 383 at 7.)  In the same filing, Plaintiffs later emphasized how Defendant failed to give quarterly accountings (i.e., at the end of every three months):

      b.   <u>Defendants' accounting was not quarterly.</u>

<u>A quarterly account is one that is made once every three months.</u> Quarterly accounting allowed the partners to monitor the flow of revenue, to track expenses, to plan future activities and to offset potential financial problems.  In short, quarterly accounting gave the financial status of the partnership.

Defendants' first accounting was for 2005 but also included accounting from 2004.  In addition, Defendants' first accounting included accounting for the entire year of 2005.  Defendants' accounting was not always consistent with what was provided to Hernandez and what was provided to Klatt.  Defendants' next accounting was for 2006.  As with the 2004–2005 accounting, Defendants' 2006 accounting contained all quarters for 2006. Defendants made no further accountings to Plaintiffs after the 4th Quarter of 2006.

. . . .

Though Defendants maintain they accounted to Plaintiffs "as soon as [they] were able to close out for the quarter," and that they started accounting in 2004, the evidence shows that this was not the case.  A "quarterly" report that contains multiple quarters is not a quarterly report.  The first "quarterly" report containing accounting in 2005 could not have been first accounted to in 2004.  The final and only accounting in 2006 was at the end of 2006.  Despite clearly obligations to do so under the Agreement Contract, Defendants made no accounting to Plaintiffs in 2007.

(Id. at 8–10 (emphasis added) (internal citations omitted).)  Thus, to the extent that Plaintiffs attempted to contradict their previous explanation about the parties' agreement concerning the quarterly accountings at the hearing, the Court finds that Plaintiffs' earlier judicial admissions establish the parties' agreement to submit quarterly accountings at the end of each quarter.  See Martinez v. Bally's Louisiana, Inc., 244 F.3d 474, 476 (5th Cir. 2001) ("A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them. . . . Although a judicial admission is not itself evidence, it has the effect of withdrawing a fact from contention.").  The parties clearly agreed upon quarterly accountings to be submitted on a quarterly basis.

Although both parties acknowledge their agreement for quarterly accounting, Defendant's Motion neglects to realize the impact of quarterly accounting on the accrual date for purposes of his statute-of-limitations argument. For purposes of the fourth quarter of 2006, Defendant did not have to perform until January 1, 2007 because the parties' agreement meant that the fourth quarter did not end until close of business on December 31, 2006.  At the hearing, Defendant even appeared to acknowledge that his time for performance could not have been due until the end of the fourth quarter:

> The Court: I understand.  I understand about all of this Christmas stuff, and I'll show up at Christmas, and everybody is going to be happy, and you're going to get $50,000 and it never happened.  Fine. That payment wasn't due at that point; was it?

Mr. Miller: Well, payments were due quarterly.  That quarter, it was
due December 31, 2006.  That was the end of the quarter.  That was
when it's judicially admitted the payments are due.

(Id. 4:8–16.)  Therefore, Defendant's failure to tender the "Christmas 2006" bonus of $50,000 could not have amounted to a breach and Plaintiffs' action could not have accrued until January 1, 2007.

Accordingly, even though Defendant did not distribute the $50,000 "Christmas 2006" bonus that he had alluded to, his non-performance did not—and could not—constitute a breach because his non-performance occurred before he had a duty to perform.  See Restatement (Second) of Contracts § 235 cmt. b ("Performance may not be due because a required period of time has not yet passed . . . . [i]n such a case, non-performance is justified."); Corbin, Contracts § 943 (1951) ("[F]ailure to render the performance promised will not be a breach of contract unless the time fixed for such performance has expired and all conditions precedent have occurred."); Williston, Contracts § 2027B (3d ed. 1978) ("[N]o action on the contract can be maintained until the time when the defendant's performance becomes due according to the terms of his promise; and the [s]tatute [of limitations] should not begin to run until then . . . .").  Thus, Plaintiffs' cause of action for breach of contract did not—and could not—accrue in December 2006.

Even were the Court to construe Defendant's argument that the

14

Christmas 2006 occasion was an anticipatory repudiation and therefore qualified as a breach for purposes of determining Plaintiffs' accrual date, see Admiral Motor Hotel v. Cnty. Inns, 389 S.W.2d 694, 700 (Tex. Civ. App. 1965) (acknowledging that an anticipatory repudiation applies when a party repudiates a contract before time for performance), his argument fails to satisfy the requirements of this theory.

To constitute repudiation, "a party to a contract must absolutely and unconditionally refuse to perform the contract without just excuse." El Paso Prod. Co. v. Valence Operating Co., 112 S.W.3d 616, 621 (Tex. App. 2003). "[T]he declaration of intent to abandon must be in positive and unconditional terms." Preston v. Lowe, 240 S.W.2d 486, 487 (Tex. App. 1951). Additionally, the repudiation "must be accepted or acted on by the other party." Townewest Homeowners Ass'n, Inc. v. Warner Comm., Inc., 826 S.W.2d 638, 640 (Tex. App. 1992) (citing Kilgore v. Nw. Tex. Baptist Ed. Soc., 37 S.W. 598 (Tex. 1896)); see also Ingersoll-Rand Co. v. Valero Energy Corp., 997 S.W.2d 203, 211 (Tex. 1999) ("It is true that limitations may begin to run upon a promisor's anticipatory repudiation, but only if the repudiation is adopted by the nonrepudiating party."); accord Franconia Assoc. v. United States, 536 U.S. 129, 143 (2002) ("Such a repudiation ripens into a breach prior to the time for performance only if the promisee 'elects to treat it as such.'" (quoting Roehm v. Horst, 178 U.S. 1, 13 (1900))).

Defendant did not unequivocally refuse to pay Plaintiffs their share of the profits in December 2006.  To the contrary, when Plaintiffs arrived at Defendant's office in December 2006, the facts only reveal that Defendant did not provide the checks.  According to Hernandez:

> After the Halliburton agreement was over -- It was for December 2006 . . . we were going to get . . . a $50,000 bonus for Christmas or for January 1st. . . . We knew we were getting a -- an end-of-the-year bonus of $50,000, and that was a piece.  So we were celebrating that it was a good Christmas, and Lynn said, "Well, just come by right before the end of the year.  We'll sign the checks and everybody will have a good Christmas."  So we went by there and <u>didn't get the checks cut</u>.

(Hernandez Dep. 23–24 (emphasis added).)  Defendant did not "absolutely and unconditionally refuse to perform the contract."  <u>El Paso Prod. Co.</u>, 112 S.W.3d at 621.  He simply did not cut the checks.  This does not amount to a "positive and unconditional" intent to abandon his obligation under the Agreement Contract. <u>Preston</u>, 240 S.W.2d at 487.  Moreover, Plaintiffs did not treat Defendant's failure to remit the $50,000 check as a breach.  Plaintiffs only thought Defendant needed more time to reconcile the books—not that he refused to perform his obligation under the Agreement Contract.  As such, Defendant's lack of tendering the $50,000 bonus to both Hernandez and Klatt was not an anticipatory breach, and Plaintiffs' breach-of-contract action did not accrue in December 2006.

B.    <u>End of January 2007</u>

Conversely, Plaintiffs argue that the accrual date of their

breach-of-contract claim was no earlier than the end of January 2007, and thus the

limitations bar does not apply.  (Resp. at 7.)  According to Plaintiffs, "It was not

until the end of January 2007—as Frazier [had] requested—that Plaintiffs again

met with him to receive the distribution checks.  It was then that Defendant refused

to fulfill his promise of a distribution and instead informed Plaintiffs of his

unilateral decision to purchase obsolete products."  (Id. at 8 (citing Hernandez Dep.

24:1–16).)

However, Plaintiffs' theory relies exclusively on Defendant's refusal

to perform and overlooks the fact that Defendant's failure to distribute the earnings

earlier in January 2007 may have constituted a breach causing Plaintiffs'

breach-of-contract claim to accrue earlier in January 2007.  In other words,

Defendant's breach did not necessarily occur when he affirmatively refused to

perform.  It is black-letter law that a breach can encompass either a refusal to

perform or a failure to perform.  Orix Capital Markets, L.L.C. v. Wash. Mut. Bank,

260 S.W.3d 620, 623 (Tex. App. 2008) ("A breach of contract occurs when a party

fails or refuses to perform an act that it expressly promised to do.").  Defendant's

failure to remit the earnings to Plaintiffs earlier in January 2007 may have

constituted a breach.  To be sure, the parties agreed that Defendant had an

obligation to distribute two-thirds of the profits at the end of every quarter.  (See

Mot. at 4; Dkt. # 422 at 4; Dkt. # 383 at 8.)  Because the fourth quarter of 2006

ended on December 31, 2006, Defendant had a duty to disburse the $50,000 profit

to each Plaintiff sometime after January 1, 2007.  The exact date of that duty is

unknown because the parties' Agreement Contract did not specify a time for

performance.

   "Texas courts have repeatedly held that, where a contract does not

provide a time for performance, the law will imply that performance must occur

within a reasonable time." Pearcy v. Envtl. Conservancy of Austin and Cent. Tex.,

Inc., 814 S.W.2d 243, 246 (Tex. App. 1991) (citing KMI Continental Offshore

Prod. Co. v. ACF Petroleum Co., 746 S.W.2d 238, 243 (Tex. App. 1987); M.J.

Sheridan & Son Co. v. Seminole Pipeline Co., 731 S.W.2d 620, 622 (Tex. App.

1987); Heritage Res., Inc. v. Anschutz Corp., 689 S.W.2d 952, 955 (Tex. App.

1985)).  What constitutes a "reasonable time" depends on the facts and

circumstances as they existed when the contract was formed.  Id. (citing Heritage

Res., 689 S.W.2d at 955).  Factors to inform the "reasonable time" inquiry include

"the nature and character of the action and the difficulty of accomplishing it, as

well as the purpose of the agreement." Id. (citing Wade Contractors, Inc. v. C.W.

& A., Inc., 589 S.W.2d 505, 507 (Tex. Civ. App. 1979); Krueger v. Young, 406

S.W.2d 751, 756 (Tex. Civ. App. 1966)).  "Where the material facts are

undisputed, the question of what is a reasonable time is a matter of law." Id.

(citing KMI Continental Offshore Prod. Co., 746 S.W.2d at 243).

Here, the Court need not determine the exact date that Defendant should have submitted the earnings because the only issue is whether the four-year statute of limitations bars Plaintiffs' breach-of-contract action. As such, the Court need only address whether Defendant should have paid the earnings before or after January 5, 2007—the limitations bar date.

The Court is satisfied that a reasonable time for performance would <u>not</u> have been on or before January 5, 2007—just five days after the fourth quarter had ended. Defendant would have needed an appreciable amount of time following the end of the quarter to collect and gather documentation concerning the profits and expenses and then to prepare and distribute the accounting reports.[2] The Court cannot say that a reasonable amount of time to perform those tasks would have only been five days. Indeed, when Plaintiffs went to Defendant's office in mid-January 2007, Defendant requested more time to pay the distribution because his wife, the bookkeeper, needed more time to "reconcile the books." (Hernandez Dep. 23:21.) Accordingly, Defendant's failure to remit the one-third earnings prior to January 5, 2007—just five days after the fourth quarter ended— did not constitute a breach causing Plaintiffs' breach-of-contract claim to accrue.

---

[2] Plaintiffs provided two examples of Defendant's accounting (one for 2005 and another for 2006) as exhibits to their Response. (<u>See</u> Dkt. # 497, Ex. E, G.) However, neither accounting report bears a date indicating <u>when</u> these reports were submitted to Plaintiffs. Instead, Plaintiffs indicate in their briefing that they did not receive either report until June 18, 2007. (Dkt. # 497 at 10.)

At a minimum, Defendant has not satisfied his burden to prove the statute-of-limitations affirmative defense. See Hinsley, 201 F.3d at 645 ("Under Texas law, a party defending on [the] ground of statute of limitations bears the burden of proof on this issue. A party asserting limitations must not only establish the applicability of the limitations statute, but must, as well, prove when the opponent's cause of action accrued." (internal quotation marks and citations omitted)). Defendant has not shown that he had an obligation to remunerate both Hernandez and Klatt with the $50,000 after January 1, 2007, but before January 5, 2007, and he did not argue that five days was a reasonable period to execute his promised performance. Instead, Defendant relied exclusively on his failure to tender the $50,000 during Christmas 2006 to support his statute-of-limitation argument, which as this Court has previously explained, was prior to the required time for performance, did not constitute an anticipatory repudiation, and was thus insufficient to prove that Plaintiffs' cause of action accrued in December 2006.

Accordingly, because Defendant's failure to distribute the $50,000 earnings prior to January 5, 2007 did not constitute a breach, Plaintiffs' cause of action for fourth quarter 2006 earnings did not accrue prior to January 5, 2007 and, thus, is not barred by Texas's four-year statute of limitations. Therefore, the Court **DENIES** Defendant's Motion for Summary Judgment concerning Plaintiffs' breach-of-contract claim for earnings from the fourth quarter of 2006.

C.      Quarters Before Fourth Quarter 2006

However, to the extent that Plaintiffs seek payment for the two-thirds shares owed for quarters in 2005 and prior to the fourth quarter of 2006, those claims are barred by the statute of limitations because they would have accrued well before January 5, 2007.[3]  Texas law continually recognizes that "when the terms of an agreement call for periodic payments during the course of the contract, a cause of action for such payments may arise at the end of each period before the contract is complete."  Townewest Homeowners Ass'n, 826 S.W.2d at 640; see also F.D. Stella Prods. Co. v. Scott, 875 S.W.2d 462, 465 (Tex. App. 1994) ("For breach of contracts requiring fixed, periodic payments, Texas law is clear that a separate cause of action arise for each missed payment.").  The cause of action for breach of contract arises when each payment is due, and the injured party has four years to bring suit or will be otherwise barred by the statute of limitations.  F.D. Stella Prods. Co., 875 S.W.2d at 465.

For each quarter that Frazier failed to pay Plaintiffs the two-thirds share of the profits, the limitation period began to run as to those particular quarterly payments because they were due and payable.  See Townewest

---

[3] As indicated above, Plaintiffs do not give specified dates for their breach-of-contract claim.  (See TAC ¶¶ 121–22, 127–28.)  The only facts before the Court to indicate a breach of contract relate to the $50,000 distribution for the fourth quarter of 2006.  However, to the extent that Plaintiffs' breach-of-contract claims allege additional breaches prior to the fourth quarter of 2006, they are barred by the statute of limitations as discussed infra.

Homeowners Ass'n, 826 S.W.2d at 640 ("[E]very time appellee failed to make their quarterly payments, as promised under the contract, the limitation period would begin to run as to those particular payments because they were due and payable.").  Given that Plaintiffs' claims for breach of contract for quarters earlier than the fourth quarter of 2006 would have accrued well before January 5, 2007, they are barred by the applicable statute of limitations.

Plaintiffs present two equitable tolling theories in their briefing to the Court.  (Resp. at 9–12 (discussing the discovery rule and fraudulent concealment).)  However, Plaintiffs only discuss these theories with respect to the earnings for the fourth quarter of 2006.  Plaintiffs do not argue that these equitable defenses apply to any breach-of-contract claims in 2005 or for quarters prior to the fourth quarter of 2006.  As such, the Court is unable to say whether these theories would warrant tolling Plaintiffs' accrual date for any breach-of-contract claims in 2005 or prior to the fourth quarter of 2006.

In the absence of any equitable tolling argument, the Court therefore **GRANTS** Defendant summary judgment on Plaintiffs' breach-of-contract claims for earnings from 2005 and the first through third quarters of 2006.

<u>CONCLUSION</u>

For the aforementioned reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion for Partial Summary Judgment

Concerning Limitations (Dkt. # 496.)

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, April 9, 2014.

_____

David Alan Ezra
Senior United States Distict Judge